# William P. Fodell, Appellant, *v.* Mary C. Miller.

*Beneficial associations—Change of beneficiary—Fraud.*

A beneficial association was organized " to create a fund for the benefit of its members during sickness or other disability, and in the case of death to pay a stipulated sum to such person or persons as may be designated by each member; thus enabling him to guarantee his family against want." A member of the association surrendered his certificate which was made payable to his wife, and took another payable to himself. He subsequently surrendered the second certificate and directed another to be issued payable to another person described in his application as a "dependent friend." This certificate was issued in consideration of the representations and declarations made to the association in the application. It appeared that the last beneficiary was not a dependent friend, but that he represented a creditor of the member, and that the creditor furnished the dues and assessments subsequently paid to the association. *Held*, in an issue between the beneficiary and the member's wife, that the beneficiary was entitled to recover only the dues and assessments paid by him with legal interest.

Argued Jan. 5, 1899. Appeal, No. 150, Jan. T., 1898, by plaintiff, from judgment of C. P. No. 1, Phila. Co., June T., 1897, No. 845, on case stated. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Case stated.

The Grand Lodge of the Ancient Order of United Workmen of Pennsylvania was incorporated by the general assembly of Pennsylvania by the Act approved March 9, 1871, P. L. 197. The 4th section of said act was as follows: " It shall be lawful for the corporation to create, hold and disburse a beneficiary fund for the relief of the members and their families, of the lodges established by this corporation, under such regulations as may be adopted by the corporation; Provided, that such fund shall at no time exceed $5,000."

The objects of the order, as recited in the constitution adopted by it, were as follows: " Pretermitting all reference to nationality, political opinions or denominational distinctions or preferences, but believing in the existence of a God, the Creator and preserver of the universe, and recognizing as a fundamental principle that usefulness to ourselves and others is a

duty which should be the constant aim and care of all, the following are submitted as the aims and purposes of the 'Ancient Order of United Workmen':

" 1. To embrace and give equal protection to all classes and kinds of labor, mental and physical; to strive earnestly to improve the moral, intellectual and social condition of its members, to endeavor, by wholesome precepts, fraternal admonitions and substantial aid, to inspire a due appreciation of the stern realities and responsibilities of life.

" 2. To create a fund for the benefit of its members during sickness or other disability, and in case of death, to pay a stipulated sum to such person or persons as may be designated by each member, thus enabling him to guarantee his family against want.

" 3. The adoption of such secret work and means of recognition as will insure the protection of its members wherever the order may exist.

" 4. To hold lectures, read essays, discuss new inventions and improvements; encourage research in art, science and literature, and, when practicable, maintain a library for the improvement of the members."

The said corporation continued to exist until the year 1886, when it was dissolved in the following manner:

At the sixteenth annual session of said corporation, held at Pittsburg, Pa., on January 15, 1886, the following preamble and resolutions were adopted:

" Whereas, the Grand Lodge of the Ancient Order of United Workmen, of Pennsylvania, has become convinced, from the recent decisions of the Supreme Court of this commonwealth, that it is no longer possible to carry out, under the charter or act of incorporation granted by act of assembly, March 9, 1871, the object of its fraternal, literary and beneficial association as designed by its founders and understood by their successors; therefore, be it

" Resolved, 1. That the Grand Lodge of the Ancient Order of United Workmen of Pennsylvania, corporation created by said act of assembly, shall, immediately upon the adoption hereof, proceed to and enter upon a liquidation of all its business affairs; and that, to effect and attain that end, the said the Grand Lodge of United Workmen of Pennsylvania, and

its officers, shall and will not admit into the order any new subordinate lodges, or issue to any person any new beneficiary certificate, or change, alter or renew any beneficiary certificate now outstanding; or make or enter into any new contract not absolutely necessary in liquidation, as hereinafter mentioned.

"Resolved, 2. That no subordinate lodge shall admit or initiate into membership any new members.

"Resolved, 3. That the Grand Lodge of the Ancient Order of United Workmen of Pennsylvania hereby nominates, constitutes and appoints the following named persons members of said incorporation : J. A. Marchand, No. 100 ; Alfred Marland, No. 113 ; W. R. Ford, No. 40 ; M. C. Gardner, No. 124; and J. M. Logan, No. 23, a committee, to be known as ' The Liquidating Committee ' of said corporation, for the purpose of winding up and settling the affairs of said corporation. The duties of the said committee shall be to settle, liquidate and pay all final judgments entered against said corporation, and all just and legal claims that may be made against said corporation, and to make provision for the discharge and fulfillment of all just and lawful contracts and obligations of said corporation now existing, and to pay and discharge beneficiary certificates of members who may die in good standing up to and including January 31, 1886. For the purpose of doing and performing all matters and things set forth and expressed in this resolution, and all other matters and things necessary and lawful to be done in winding up and settling the affairs of said corporation, the said committee is hereby clothed with full power and authority to act in the name of the corporation, do all legal acts and things which, in the opinion of a majority of said committee, may be needful and proper, and to use the common seal of the corporation. The said committee shall have full power to fill vacancies in said committee. And resolved further, that the said committee is hereby authorized and empowered to provide for the expenses of the said committee by warrants drawn on the general fund in the hands of the custodian of said fund, appropriation of which amount of moneys not otherwise appropriated is hereby made.

"Resolved, 4. That the said Grand Lodge hereby nominates, constitutes and appoints J. M. McNair, the present grand recorder of said corporation, custodian and receiver of the bene-

ficiary fund accruing from assessments Nos. 2 and 3, of January, 1886, and hereby directs that he shall apply the proceeds of the same as follows, to wit: The sum of four thousand dollars to be retained by him as said custodian for use in payment of possible judgments in the cases of Lydia Manz and Elmira V. Taylor, now pending against said Grand Lodge, and the balance to the payment of beneficiary certificates of members who may die, in good standing, up to and including January 15, 1886, said beneficiary certificates to be paid only after proper proofs of death, etc., have been furnished, as in such cases heretofore required by the rules and regulations of said Grand Lodge. The said custodian is hereby authorized and empowered to receive all other moneys collected through beneficiary assessments, to be held by him; subject to the order and approval of the committee for winding up and settling the affairs of said corporation. The said custodian to give bonds in the sum of five thousand dollars for the faithful performance of his duties, said bond to be approved by said liquidating committee. He shall receive for his services seventy-five dollars, to be paid out of the general fund in the hands of the custodian of the same, by warrant drawn by said liquidating committee."

On the same day the said organization surrendered its "fraternal charter and ritual," granted to it by the Supreme Lodge, Ancient Order of United Workmen of the United States, to the supreme master workman.

A judgment of ouster was entered against the said corporation at the suit of The Commonwealth of Pennsylvania ex rel. Attorney-General v. Grand Lodge of the A. O. U. W. of Pennsylvania, by the court of common pleas No. 4, of Philadelphia county, on March 15, 1886, as of December term, 1885, No. 459, ultra vires being the cause for such judgment.

The Grand Lodge of the jurisdiction of Pennsylvania, A. O. U. W., an unincorporated, "fraternal, charitable, beneficial and benevolent society or order, organized for the promotion of the welfare, social and fraternal, of its members, and the protection of those dependent upon them," was organized at Pittsburg, Pa., on January 15, 1886, by the adoption of the following preamble and resolutions:

"Whereas, By reason of the decision of the Supreme Court, defining the limits of society corporations, it becomes impossi-

ble for our lodges to obey the contracts and obligations under which they were instituted; therefore, be it

"Resolved, That solemnly affirming our faith in and allegiance to the whole order, and its system of government by subordinate, grand and supreme lodges, we hereby agree to organize ourselves into a grand lodge, under the name, style and title of the Grand Lodge of the jurisdiction of Pennyslvania, Ancient Order of United Workmen, and petition the supreme master workman, or his authorized deputy, to so constitute and organize us as a separate beneficiary jurisdiction under the laws, rules and regulations of the fraternal beneficiary society known as the Ancient Order of United Workmen.

"Resolved, That we do solemnly pledge our obligated faith to pay the beneficiary death benefits of $2,000 to the designated beneficiaries of all the members of the lodges existing in this jurisdiction, heretofore known as that of the Grand Lodge of Pennsylvania; provided, that proofs of death show the death occurred while the member was in good standing in his subordinate lodge.

"Resolved, That the assessments needed in February shall be sent to all the said lodges without reference to whether they are now represented in this convention or not, and shall contain the following notice, viz: 'This assessment is issued by the reorganized Grand Lodge of the jurisdiction of Pennsylvania, A. O. U. W., organized at Pittsburg, January 15, 1886, and your payment will be your consent to the same. In return the said Grand Lodge guarantees to you protection of your membership rights, including your beneficiary fund due at your death, so long as you pay your dues and the assessments required by the laws of the A. O. U. W., which now exist, or may hereafter be adopted by the Supreme Lodge and this Grand Lodge.' The said notice shall be printed on all the financiers' notices and by them sent to all the members.

"Resolved, That all members who fail to, or refuse to, pay their assessments on February 28, 1886, shall be marked suspended, and shall thenceforth have the same rights and be subject to the same penalties as are imposed upon suspended members by the laws, rules and regulations of the order."

And adopted the following resolutions for its government:

"Resolved, That the laws, rules and regulations of the Cor-

porate Grand Lodge of the A. O. U. W., of Pennsylvania, as amended in 1883–1884, and as amended January 15, 1886, shall be the laws, rules and regulations for the government of the Grand Lodge of the jurisdiction of Pennsylvania, A. O. U. W., and the subordinate lodges in said jurisdiction.

"Resolved, That the regulations and decisions heretofore in force in the Corporate Grand Lodge, A. O. U. W., of Pennsylvania, are, as far as applicable to the laws now existing, in full force and effect. . . ."

On October 29, 1877, Edward G. Miller, the husband of defendant, became a member of Philadelphia Lodge, No. 73, a subordinate lodge of the Corporate Grand Lodge of the A. O. U. W., of Pennsylvania, and a policy of insurance or benefit certificate was issued by said corporation to said Miller, in which Mary C. Miller, his wife, and the defendant in this case, was named as the person entitled to receive the benefit of $2,000 to be paid by the said corporation on the death of the said Miller.

In his application for membership and the policy or certificate the said Miller agreed to accept the policy or certificate "subject to such laws, rules and regulations as now exist, or may hereafter be adopted by and governing said corporation."

On January 19, 1878, the said Miller, without the knowledge or consent of his said wife, the defendant, and without any act on her part, from which knowledge or consent could be implied, but in accordance with the laws of the order, surrendered the aforesaid certificate or policy, and the defendant had no knowledge of the said surrender and of the issuing of new certificates until after her husband's decease.

On January 19, 1878, by direction of said Miller the Corporate Grand Lodge, A. O. U. W. of Pennsylvania, issued a new certificate or policy in place of the original one to defendant, payable to the Marlborough Building and Loan Association.

On September 9, 1878, the said Miller surrendered this policy and directed a new one to be issued to be made payable to himself.

The said E. G. Miller was in 1880, an employee of the Northern Liberties Gas Works, a corporation created by the commonwealth of Pennsylvania, and had become indebted to the said corporation in the sum of $6,532.48, for which sum he confessed judgment to the same, and being so indebted and unable to pay

the said amount, he desired to secure the eventual payment of some portion thereof to the said corporation; he accordingly proposed to transfer for the benefit of the said company the policy of insurance or benefit certificate issued to him as aforesaid by the Grand Lodge of the A. O. U. W. of Pennsylvania. His offer was accepted, and W. P. Fodell, the plaintiff in this case, was selected as the person to be designated by the said Miller as the beneficiary in the policy of insurance or benefit certificate to be issued by the said Grand Lodge of the A. O. U. W. of Pennsylvania, in place of the one then held by the said Miller and made payable to himself.

On July 23, 1880, Miller, in accordance with his proposal, surrendered the last-mentioned policy, and filed the following direction:

"I, Edward G. Miller, to whom the within certificate was issued, do hereby revoke my former direction as to the payment of the beneficiary fund due at my death, and now authorize and direct such payment to be made to William P. Fodell bearing relationship to myself of dependent friend.

"Witness my hand and seal this 23d day of July, 1880.

"E. G. MILLER. [Seal.]

"Attest: WILLIAM K. CARLILE.

"Recorder."

[Seal of Lodge.]

Whereupon the policy of insurance or certificate filed in this case was issued by the Grand Lodge, Ancient Order of United Workmen, as follows:

"GRAND LODGE, ANCIENT
ORDER OF UNITED WORKMEN OF PENNSYLVANIA.

"No. 14,137. $2,000.

"This beneficiary certificate witnesseth that the Grand Lodge of the Ancient Order of the United Workmen of Pennsylvania, in consideration of the representations and declarations made to them in the application for this certificate, bearing date the 23d day of July, 1880 (which application is made a part of this contract), and of the sum of one dollar to them in hand paid before the delivery hereof, the receipt of which is hereby acknowledged, and in consideration of the payment to said Grand Lodge of all assessments made upon this certificate in

accordance with the terms subscribed to in the aforesaid application, do hereby insure the life of brother E. G. Miller in the sum of two thousand dollars to be paid at his death to William P. Fodell, his friend; it is also understood and agreed that the conditions set forth in the application for this certificate are the conditions upon which Brother E. G. Miller is insured, and that any violation of said conditions renders this certificate null and void, and that said Grand Lodge shall not then be liable for the above sum insured or any part thereof.

"In witness whereof, the said Grand Lodge of Pennsylvania have hereunto affixed their corporate seal, attested by the grand master workman and grand recorder at Pittsburg, this 26th day of July, one thousand eight hundred and eighty.

"JAMES PETRIE, Grand Master Workman.

"Attest:          J. M. McNAIR, Grand Recorder.
          [Seal.]

"We, the undersigned master workman and recorder of Philadelphia Lodge, No. 73, do hereby countersign and attach the seal of this lodge thereunto, rendering this certificate valid and in full force this 2d day of August, 1880.

"SAMUEL MILLIGAN, Master Workman.

"Attest:          WILLIAM K. CARLILE, Recorder.
          [Seal.] "

The said certificate does not describe the said Fodell as "dependent friend," but simply as "friend," and neither the said Northern Liberties Gas Works nor the said Fodell were in any way parties to the application other than as above stated, and neither in any way represented to the Grand Lodge aforesaid or to any one that the said Fodell was dependent for support in any way upon the said E. G. Miller. The said Miller, at the time of his death, had not paid any of the aforesaid sum of $6,532.48, in which amount he was indebted to the Northern Liberties Gas Works.

Assessments Nos. 1 and 2, called by the Unincorporated Grand Lodge of the jurisdiction of Pennsylvania, A. O. U. W., organized at Pittsburg, Pa., January 15, 1886, were paid on behalf of the said Miller, and the following was contained upon his assessment notice :

"This assessment is issued by the Reorganized Grand Lodge

of the jurisdiction of Pennsylvania, A. O. U. W., organized at Pittsburg, January 15, 1886, and your payment will be your consent to the same. In return, the said Grand Lodge guarantees to you protection of your membership rights, including your beneficiary fund due at your death, so long as you pay your dues and the assessments required by the laws of the A. O. U. W., which now exist, or may hereafter be adopted by the Supreme Lodge and this Grand Lodge."

The said Miller died November 1, 1896, at Philadelphia, a member in good standing of Philadelphia Lodge, No. 73, of the unincorporated society, or order known as the Grand Lodge of the jurisdiction of Pennsylvania, Ancient Order of United Workmen.

Dues and assessments amounting to $440.34 were paid to the said Corporate Grand Lodge and to the said Unincorporated Grand Lodge on account of said Miller's membership. The money making up the said sum of $440.34 paid as follows, in 1880, $7.00; 1881, $19.00; 1882, $21.50; 1883, $22.10; 1884, $20.45; 1885, $21.45; 1886, $26.50; 1887, $26.00; 1888, $26.84; 1889, $26.00; 1890, $28.00; 1891, $30.00; 1892, $33.00; 1893, $32.00; 1894, $35.00; 1895, $35.00, and 1896, $30.50, was paid by the said Fodell with money furnished to him for the said purpose by the said Northern Liberties Gas Works, on account of said Miller's membership, but without the knowledge of the A. O. U. W., and said dues and assessments were charged by the A. O. U. W. against the said Miller, the notices of the same directed to him, and payments received as coming from him.

The said Miller left to survive him a widow, the defendant, who lived with him continuously from the time of their marriage until his death, and formed one of his family. He also left several children, the defendant being their mother.

At no time was there any dependency of the said Fodell upon the said Miller, and no relationship by marriage or blood existed between them, nor did the said Fodell form any part of said Miller's family.

At the time of death said Miller had not paid any of the sum of $6,532.48 aforesaid, in which amount he was indebted to the Northern Liberties Gas Works, for which company the said Fodell is, so far as he has any rights under the before set forth policy of insurance or benefit certificate, a trustee.

The fund of $2,000 has been paid into court by the Grand Lodge of the jurisdiction of Pennsylvania, A. O. U. W., and was raised by assessments made upon and paid by members of the unincorporated order or society of the A. O. U. W. for the purpose of paying the beneficiaries of deceased members. An issue has been framed between the plaintiff and the defendant to determine to whom the fund belongs.

BRÉGY, J., entered " judgment for the plaintiff for $665.07, being the full amount of dues and assessments paid by the plaintiff, with legal interest, to be paid out of the fund paid into court, and judgment for the defendant for the balance of the fund paid into court."

*Errors assigned* were (1) in not entering judgment for plaintiff for the full amount of the fund in court; (2) in awarding any part of the fund to defendant.

*Henry Budd,* for appellant.—Nothing which has occurred since the making of the contract can affect the rights of the beneficiary named in the certificate without his assent, so long, that is, as the certificate itself remains unrevoked. Miller might, indeed, have revoked the certificate and obtained the issue of a new one, but he has not done so, and the contract stands, as made, to be governed by the law then affecting it; and if this is the case, if the contract was valid when made, Fodell, the beneficiary named in the certificate, is entitled to the fund.

It is submitted that the contract of the order, although, which, if made since the acts of 1893, would not be enforceable, was, at the time of its making, a valid one, and the acts of 1893 not being retrospective, is now in full force : Wolpert v. Knights of Birmingham, 2 Pa. Superior Ct. 564; Bodnairk v. Nat. Slavonic Society, 6 Dist. Rep. 449; Maneely v. Knights of Birmingham, 115 Pa. 305; Knights of Honor v. Martin, 13 W. N. C. 160.

The rights of the parties are governed by the contract made by the policy, and in case of any apparent conflict between it and the constitution, the former, in the absence of express prohibition to make such a contract as is contained therein, must govern : Folmer's App., 87 Pa. 133; Washington Life Ins. Co. v. Schaible, 1 W. N. C. 369.

*William Hichman Shoemaker*, for appellee.—The defendant is not a life insurance company within the meaning of the act of May 11, 1881: Dickinson v. A. O. U. W., 159 Pa. 258; Johnson v. R. R. Co., 163 Pa. 127; Lithgow v. Knights, 165 Pa. 292; Com. v. Beneficial Assn., 137 Pa. 412.

The general line of authorities in cases like the one at bar is that the power of designation of beneficiaries must be strictly exercised within the limitations imposed by the charter and by-laws: Arthars v. Baird, 8 Pa. C. C. R. 67; Ballou v. Gile, 50 Wis. 614; Maneely v. Knights of Birmingham, 115 Pa. 305; Supplee v. Knights, 18 W. N. C. 280; Northwestern Masonic Aid Association v. Jones, 154 Pa. 99.

Notwithstanding the payment of the money into court by the A. O. U. W., in the disposition of this case between Fodell and Mrs. Miller, the court should be governed by the laws and regulations of the A. O. U. W.: Burst v. Weisenborn, 1 Pa. Superior Ct. 279; Grand Lodge v. Keener, 38 Mo. App. 543; Bacon on Beneficial Societies, secs. 244, 252.

The authorities are uniform that the beneficiary's interest is not vested as in life insurance policies: Bacon on Beneficial Societies and Life Ins. sec. 306; Marsh v. American Legion of Honor, 149 Mass. 515; Masonic Aid Assn. v. Jones, 154 Pa. 99.

The representation upon which the contract was based was a material one, and it was not true, as there was no dependency of Fodell on Miller, or protection of Fodell by Miller. There was, therefore, no contract binding the A. O. U. W.: Legion of Honor v. Green, 71 Maryland, 263; Bliss on Life Ins. secs. 47, 48; May on Ins. sec. 184; Carson v. Ins. Co., 1 Pa. Superior Ct. 572.

The designation of Fodell as the beneficiary failing, the widow is entitled to the fund under a fair construction of rule (*d*) of the association in regard to beneficiaries in the same manner as though the beneficiary named were dead, the designation being void: Britton v. Royal Arcanum, 46 N. J. Eq. 102; Palmer v. Welch, 132 Ill. 141; McCutcheon's App., 99 Pa. 133; Matlack v. Bank, 180 Pa. 360; Arthars v. Baird, 8 Pa. C. C. R. 67.

OPINION BY MR. JUSTICE McCOLLUM, December 30, 1899:

This is an interpleader directed to determine the ownership of a fund deposited with the court by the Grand Lodge of the

jurisdiction of Pennsylvania, Ancient Order of United Work-
men. The issue joined is between William P. Fodell, plain-
tiff, and Mary C. Miller, defendant. The facts by which the
issue is to be determined on this appeal are agreed upon in the
case stated. The order aforesaid is an unincorporated fraternal
and charitable association, organized on January 15, 1886, " for
the promotion of the welfare, social and fraternal, of its mem-
bers and the protection of those dependent upon them." It
may be referred to as the successor in the jurisdiction of Penn-
sylvania of the Grand Lodge of the Ancient Order of United
Workmen of Pennsylvania, incorporated by the Act of March 9,
1871, P. L. 197. The 4th section of this act is as follows :
" It shall be lawful for the corporation to create, hold and dis-
burse a beneficiary fund for the relief of the members and
their families, of the lodges established by the corporation, un-
der such regulations as may be adopted by the corporation ;
Provided, that such fund shall at no time exceed $5,000."
Among the aims and purposes recited in the constitution adopted
by the corporation was the following : " To create a fund for
the benefit of its members during sickness or other disability,
and in the case of death to pay a stipulated sum to such per-
son or persons as may be designated by each member, thus
enabling him to guarantee his family against want."

In October, 1877, Edward G. Miller, the husband of the de-
fendant in this issue, became a member of a subordinate lodge
of the grand lodge incorporated by the act aforesaid, and a pol-
icy of insurance or benefit certificate for $2,000 was issued to
him by said corporation, and in it his wife was designated as
the beneficiary. In January, 1878, Miller surrendered said
certificate or policy, and the grand lodge by his direction issued
a new one, payable to the Marlborough Building and Loan As-
sociation. In September, 1878, he surrendered the policy pay-
able as aforesaid, and directed the issuance of a new one payable
to himself. The last mentioned policy was issued to him in ac-
cordance with his direction, and on July 23, 1880, he surrendered
the same, revoked former directions as to the payment of the
beneficiary fund due at his death, and directed such payment
to be made to William P. Fodell, the plaintiff in this issue,
who was designated by him as bearing relationship to himself
of dependent friend. Thereupon a beneficial certificate was

issued by the Grand Lodge insuring the life of Miller in the sum of $2,000, to be paid at his death to William P. Fodell, "his friend." It is this certificate or policy to which the present contention relates. Miller died November 1, 1896, at Philadelphia, a member in good standing of Philadelphia Lodge, No. 73, of the unincorporated society or order known as the Grand Lodge of the jurisdiction of Pennsylvania, Ancient Order of United Workmen. The amount payable at his death to the beneficiary named in the original policy or certificate, and in each policy or certificate which succeeded it, was the same. The decedent's wife was not advised in his lifetime of the surrender of the original policy or certificate, or of the issuance of other policies or certificates to him at any time. It will be observed that the certificate in question was issued by the Grand Lodge of the Ancient Order of the United Workmen of Pennsylvania, in consideration of the representations and declarations made to them in the application therefor, and of the payment to said lodge of all assessments made upon the certificate in accordance with the terms subscribed to in said application. It appears, however, that Fodell was not Miller's "dependent friend." In the certificate issued on the representations aforesaid the former was merely referred to as the latter's friend. As the application was made a part of the contract, and the material representation contained therein was obviously without foundation and fraudulent, it is clear that the purpose of the party insured was to conceal from the insurer the real nature of the transaction in the belief or apprehension that a frank disclosure of it would result in a refusal of the latter to sanction it. The case stated plainly shows that the dues and assessments were charged by the insurer against the insured, that the notices of the same were directed to him, and that the payments were received as coming from him. It also appears therein that the insurer was not informed in the lifetime of the insured that the money paid to Fodell on account of dues and assessments was furnished by the Northern Liberties Gas Works, a creditor of Miller.

We find nothing in the case stated which justifies the claim of the plaintiff to the entire fund. Neither the 4th section of the act of March 9, 1871, under which the Grand Lodge of the Ancient Order of United Workmen of Pennsylvania was

incorporated, nor the objects of the order as recited in the constitution adopted by it, furnishes an adequate warrant for the claim. Not one of the resolutions adopted on January 15, 1886, is authority for it. The resolution referred to in the plaintiff's printed argument does not authorize the construction contended for. It does not create a liability where none existed before, nor validate a transaction founded upon false and fraudulent representations. All the cases cited by plaintiff's counsel are distinguishable from the case in hand, as a reference to them will satisfactorily show. We think the court below entered a proper judgment in the case.

Judgment affirmed.